[No. 7586.    Decided August 11, 1909.]

ERNEST NEWCOMB, *Respondent*, v. PUGET SOUND AND QUEEN CITY BOILER WORKS, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—UNGUARDED MACHINERY —STARTING MACHINERY WITHOUT WARNING. The evidence is sufficient to sustain a verdict for injuries to a boiler maker's helper from a fall upon an unguarded shaft, where it appears that his superior ordered him into a place of danger near the shaft to assist in making repairs to a belt, promising that the machinery would not be started, and that the starting of the machinery without warning, while he without fault was placing the belt on the pulley, caused him to lose his balance and fall, and there were no guards or supports by which he could save himself.

APPEAL—REVIEW—VERDICT. A verdict will not be disturbed on appeal on account of conflict in the evidence.

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 25, 1908, upon the verdict of a jury rendered in favor of the plaintiff, for injuries sustained by an employee in a factory by reason of an

[1]Reported in 103 Pac. 456.

unguarded shaft and the starting of machinery without warning. Affirmed.

*Richard S. Eskridge* and *Hughes, McMicken, Dovell &
Ramsey,* for appellant.

*Kerr & McCord* and *L. V. Newcomb,* for respondent.

CROW, J.—Action by Ernest Newcomb against Puget
Sound and Queen City Boiler Works, a corporation, to recover damages for personal injuries. From a judgment in
his favor, the defendant appeals.

The appellant owns and operates in the city of Seattle a
boiler factory, equipped with machinery and other appliances. About twelve feet above the floor, running north and
south, and about six feet from the west wall, is a shaft carrying pulleys over which belts pass to machinery below. Upon
the particular pulley involved in this action, which is about
six feet from the south end of the shaft, are two three-inch
belts connecting with a roller machine on the floor below.
When not used, the belts are at times removed from the pulley and suspended by ropes from rafters above, one belt
hanging north and the other south of the pulley, and the
shaft passing through them. About four feet north of the
pulley, a pair of two-by-four wooden joists, located at right
angles with the shaft, form a support for one of the journal
boxes. A few inches further north is a shaft coupling consisting of two flanges secured by bolts exposed on either side.
Parallel to, and about eighteen inches east from, the shaft
a four-by-twelve inch plank extends north and south. Between the two joists which support the journal boxes and
shaft, a diagonal brace extends from the west wall to the
rafters above. The plank parallel to the shaft is reached by a
ladder at the south end of the building.

The respondent was employed by appellant as a helper
to one Harry Souder, a boiler maker. Respondent testified
that Souder was about to repair one of the belts above men-

tioned, being the one north of the pulley; that he ordered respondent up on the plank near the shaft, to untie and place the belt on the pulley so that Souder could measure the length of a splice he was about to make; that the shaft and machinery were then motionless; that Souder promised they should so remain while respondent was on the plank; that respondent, relying on such promise, went on the plank; that while he was engaged in placing the belt on the pulley, the machinery was started; that frayed edges of the belt caught on the shaft and pulled him forward; that the plank had no railing or other support; that, to recover his equilibrium, he reached for the brace to the north; that, failing to catch it, he fell upon the shaft and coupling; that the bolts of the latter caught his clothing, and that he was drawn around the rapidly revolving shaft and injured. Many of these statements were denied by witnesses for the appellant.

The evidence shows that the respondent was required to obey orders of Souder, the boiler maker, although appellant claims Souder had no authority to send respondent near the plank, shaft, or pulley. The evidence further shows that the shaft, coupling, and bolts, were unguarded, and that there was no rail or other support along the plank by which a workman could steady or protect himself. Appellant contends that the trial court erred in denying its motions for judgment at the close of the evidence, for a new trial, and for judgment notwithstanding the verdict. No other assignments are presented. The only question, therefore, is whether the evidence was sufficient to warrant the submission of the case to the jury, and sustain the verdict. In determining this question, we must regard the evidence most favorably to the respondent. Having carefully examined the entire record, we conclude that the cause was properly submitted, and that the verdict must stand.

The appellant's brief shows its positive conviction that the evidence overwhelmingly preponderates in its favor. It con-

tends that no order was given to respondent by Souder; that, under the rules of the factory, no employee, other than three sons of the foreman, were under any circumstances permitted to go on the plank or near the shaft; that the belt respondent claims he was adjusting was not then suspended from the rafters, that it had not been there for some months, and that the machinery had been in motion about five minutes before the respondent was caught and injured. It is undisputed that respondent was on the plank near the shafting, and that he was caught and most severely injured. Appellant utterly fails to account for his presence there, to present any witness who saw him there, or who knows how he happened to be there. Souder denies having sent him there; but the respondent's evidence is corroborated by the fact that he was there, that he was injured, and that no one then present disputes his statement of the manner in which the accident happened.

The appellant's mistake on this appeal is that it fails to appreciate the force of the evidence given by the respondent, which of itself is sufficient to sustain the verdict. The jury were entitled to credit him. They evidently did so, and we are constrained to say that, after a most careful consideration of all the evidence and the surrounding circumstances, we conclude they were amply justified in believing him. His testimony not only appeals to us as a most reasonable explanation of the manner in which the accident occurred, but also seems to be possessed of the elements of truth and credibility. The most that can be said on behalf of appellant is that the evidence was conflicting, the respondent's statement being denied by other witnesses. Appellant in its brief, after stating its version of the situation, the facts of the case, and the accident, says:

"Plaintiff's version of the occurrence is in irreconcilable conflict with the foregoing. He makes no mention of the fact that Souder had been working on the belt, but says that he was directed by Souder to go aloft and untie the belt, which

he says was tied up by the rope as shown in the photograph, and to place it on the pulley so that Souder might make a measurement to ascertain how much slack he should take out of the belt. It will be borne in mind that several other witnesses had before remarked that this belt had not been tied up since the belt hooks pulled out some four or five months before, but had been hung up or wound up on the machine on the floor of the shop throughout this time. Plaintiff then states that he had untied the belt and was moving it along the shaft towards the pulley, the machinery having been stopped, when the machinery was put in motion and the frayed edges of the belt caught upon the shaft and jerked the plaintiff forward; that in jerking loose from the belt he missed his balance and fell lengthways towards the north upon the coupling three or four feet away, completely missing the diagonal brace before referred to."

This statement itself suggests such a conflict of evidence as to demand a submission of the case to the jury. It was so submitted by clear, comprehensive, and able instructions given by the trial judge, to which the appellant now takes no exception. The jury accepted respondent's version, and its verdict must stand. There is ample evidence to sustain the findings, that respondent's duties required him to be near the shaft and pulley; that he was sent there by Souder, who had authority over him as a vice principal; that by reason of the unexpected starting of the machinery, he was caused to lose his balance; that in attempting to recover himself, he without fault of his own, fell upon the unguarded shafting and coupling, and that the appellant was negligent in starting the machinery while he was in a position of danger, and in having failed to properly safeguard the shaft and coupling. These facts, which appear from respondent's evidence and that of other witnesses, and which must have been found by the jury, sustain the verdict.

The judgment is affirmed.

RUDKIN, C. J., FULLERTON, GOSE, PARKER, MOUNT, and DUNBAR, JJ., concur.